# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

RAYETTA LEDOUX,

      Plaintiff,

v.                                                         No. CIV 00-1622 BB/WWD

VILLAGE OF ANGEL FIRE, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of three motions: (1) a motion for summary judgment filed by Defendants Clanton and Lusk (Doc. 45); a motion for summary judgment filed by the other Defendants (Doc. 47); and a motion to strike exhibits, filed by Defendants Clanton and Lusk (Doc. 60). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motions for summary judgment will be granted in part, and denied in part. The motion to strike exhibits is denied as moot, as the Court has not considered any irrelevant evidence contained in those exhibits in addressing the motions for summary judgment.

Plaintiff was employed by the Village of Angel Fire as the Village Clerk. Following the election of a new mayor, at the "reorganization" meeting of the village council, Plaintiff was not reappointed as clerk. Plaintiff left the meeting, immediately cleared out her desk, and did not work for the village again. She has filed this lawsuit as a result, raising federal claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981, Title VII, and the Fair Labor Standards Act ("FLSA"). As set out above, Defendants have filed two separate motions for summary judgment requesting dismissal of all claims.

The Court must examine each claim raised by Plaintiff to determine whether any or all of the Defendants are entitled to summary judgment on that claim.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider the summary-judgment motions in light of these standards.

**Discussion**

**Retaliation Claims--Applicable Law:** Plaintiff's complaint raises four different types of retaliation claims: (1) a claim under 42 U.S.C. § 1981, alleging retaliation for Plaintiff's prior opposition to racial discrimination; (2) a claim under Title VII, alleging retaliation for the same conduct; (3) a claim under 29 U.S.C. § 215(a)(3) of the FLSA, alleging retaliation for Plaintiff's complaints about violations of the FLSA; and (4) a First Amendment retaliation claim, brought under 42 U.S.C. § 1983, alleging retaliation for Plaintiff's protected speech concerning racial discrimination and violations of the FLSA.

The summary-judgment analysis is virtually identical for the first three claims. The familiar *McDonnell Douglas* burden-shifting scheme applies to all of these types of retaliation, unless there is direct evidence of retaliatory motive. *See Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002) (retaliation analysis under § 1981, *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997); *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998) (applying test without citing *McDonnell Douglas*). The first step in this burden-shifting scheme requires a plaintiff to make out a prima facie case of retaliation, which in turn requires the plaintiff to present evidence establishing three things: 1) that she engaged in protected activity; (2) that the employer took an adverse employment action against her; and (3) that there exists a causal connection between the protected activity and the adverse action. *Id.*

As for the First-Amendment retaliation claim, the analysis is somewhat different. In analyzing a free-speech retaliation claim brought by a public employee, the Court must apply the so-called *Pickering* balancing test. *Kent v. Martin*, 252 F.3d 1141, 1143 (10th Cir. 2001), *citing Pickering v. Bd. of Ed. of Township High School Dist. 205*, 391 U.S. 563, (1968). Under that four-part test, the following factors are considered: (1) whether the speech in question involved a matter of public concern; (2) whether the employee's interest in the speech outweighed the government employer's interest in having an efficient and effective workplace; (3) whether the speech was a substantial factor driving the allegedly retaliatory actions; and (4) if so, whether the employer can show that it would have taken the same actions against the employee even in the absence of the protected speech. *Id.* The first two questions are questions of law for the Court, while the latter two are usually questions of fact for the jury. *Id.*

3

**Retaliation Claims--Adverse Employment Action:** Defendants' first argument in support of their motions for summary judgment on the retaliation claims is that Plaintiff has failed to establish that she suffered an adverse employment action, and has therefore failed to present a prima facie case under the *McDonnell Douglas* test. Defendants maintain that Plaintiff abandoned her position and was not terminated, and that such abandonment cannot be an adverse employment action. Defendants point out that according to state law, Plaintiff was entitled to remain in her position as village clerk until a new clerk was appointed by the mayor and confirmed by the city council. Defendants further argue that Clanton, the new mayor, had not yet decided whether or not to reappoint Plaintiff, and simply wanted an opportunity to work with her before making that decision. Therefore, Defendants argue, Plaintiff quit her job prematurely and cannot base any claims on the loss of her position as village clerk.

Viewed in the light most favorable to Plaintiff, she has presented the following evidence on this issue: (1) After Defendant Clanton was elected mayor, he interviewed Plaintiff before the reorganization meeting; (2) following the interview, and shortly before the reorganization meeting, Plaintiff asked Clanton if he was going to reappoint her as village clerk; he stated that he had not made up his mind yet (Clanton depo. pp. 49-50; Pltf. depo. p. 94; Exhs. 4 and 5, Village MSJ); (3) Plaintiff had already been told by Carol Rumley that Clanton and Defendant Lusk, the new village administrator, had approached Rumley to ask whether she might be interested in the village clerk position (Pltf. depo. p. 89, Exh. 6, Pltf. Resp.) ; (4) the agenda for the reorganization meeting included, as one of the agenda items, the reappointments of the village police chief, the village clerk, and the village administrator (Exh. 7, *Id.*); (5) although Clanton now claims that he knew Plaintiff was legally entitled to continue in her position until another clerk was appointed, and claims he wanted a chance to work with Plaintiff before deciding whether to reappoint her, he did not tell

4

Plaintiff either of these things before the reorganization meeting, during the meeting, or after the meeting (Clanton depo. pp. 60-61, Exh. 8, *Id.*; Plaintiff depo., *passim*, describing conversations with Clanton, Exh. 6, *Id.*); (6) at the reorganization meeting, Clanton recommended reappointment of the administrator and the chief, and those reappointments were confirmed by the village council; Plaintiff's reappointment, however, was not discussed (Pltf. depo. p. 96, Exh. 6, *Id.*); (7) after the reorganization meeting, Lusk approached Plaintiff and offered to provide recommendations for any job she might seek (*Id.* p. 100); and (8) Plaintiff applied for unemployment benefits and received them without objection from the Village, although Defendants now claim Plaintiff quit her job and was not discharged (*Id.* p. 123).

Based on this evidence, the Court finds there is an issue of fact as to whether Plaintiff was constructively discharged when she was not reappointed to the position of village clerk at the reorganization meeting. An employee can prove a constructive discharge by showing she was faced with a choice of resigning or being fired. *Burks v. The Oklahoma Publishing Co.*, 81 F.3d 975, 978 (10th Cir. 1996). Similarly, when an employer "acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *E.E.O.C. v. University of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002). The evidence recited above could lead a reasonable employee in Plaintiff's position to believe she would not be reappointed to the position, but would be removed as soon as someone else was found to replace her. Especially significant are the alleged facts that Clanton and Lusk approached another employee about taking over Plaintiff's position;[1] that Clanton

---

[1] This evidence, despite being double hearsay recited by Plaintiff, can be considered because all of the speakers were identified and all were, or are, parties to this case or agents/employees of a party, speaking in connection with their employment. *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 552 (8th Cir. 1998) (affirming admission of double-hearsay evidence, as admissions of party); *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) (denying admission of similar evidence

5

never informed Plaintiff he wanted an opportunity to work with her before deciding whether to reappoint her; that the reappointment of three positions, including Plaintiff's, was on the agenda for the meeting, and nothing was said at the meeting about postponing Plaintiff's reappointment; and that the Village did not even attempt to defend Plaintiff's unemployment claim on the grounds that she had quit her position rather than being discharged.[2] Plaintiff's act of quitting her job, in the face of these alleged facts, could be found to be a constructive discharge, and Plaintiff has therefore raised an issue of fact as to whether she suffered an actionable adverse employment action. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (constructive discharge can be a cognizable claim under Title VII).[3]

**Retaliation--Causal Connection**: Defendants next attack the causal-connection prong of the prima-facie-case test. Defendants argue there is no evidence that Clanton, the Defendant who made the decision not to immediately reappoint Plaintiff, knew of her various acts of protected conduct. Absent such knowledge, argue Defendants, there can be no causal connection between the

---

because original source of double hearsay was not identified).

[2]The Court recognizes there are many possible reasons for the Village's failure to contest the unemployment claim, including ignorance of the law or a desire to be helpful to Plaintiff. At this point, however, all reasonable inferences must be drawn in favor of Plaintiff, and one reasonable inference from this fact is that the Village recognized that Plaintiff was essentially removed from her position, even if she left when she still had a legal right to remain in the position, at least temporarily.

[3]The Court also notes that, for purposes of Plaintiff's First Amendment claim, the alleged retaliatory action need not rise to the level of an "adverse employment action" as that concept has been defined for purposes of Title VII, § 1981, and the FLSA. Instead, an actionable retaliatory action under the First Amendment is an action that would deter a person of ordinary firmness from exercising her right to free speech, a standard easier for a plaintiff to meet than the adverse-employment-action requirement. *See Power v. Summers*, 226 F.3d 815, 820-21 (7th Cir. 2000). the Court does not rule out the possibility that a jury could find that merely delaying Plaintiff's reappointment, leaving her in limbo for an indeterminate period of time, might be a First Amendment violation if done to punish her for engaging in protected speech.

protected conduct and the allegedly retaliatory act. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1321 (10th Cir.1999) (plaintiff failed to establish causal connection, due to absence of evidence that persons involved in decision-making process knew of her protected conduct). The first step in addressing this argument is to determine what protected conduct is involved in each claim Plaintiff has raised.

With respect to the § 1981 and Title VII retaliation claims, the protected conduct consists of Plaintiff's prior discrimination lawsuit against the Village, which was settled in 1999. As to the FLSA retaliation claim and the First Amendment claim, the alleged protected conduct consists of one memorandum from Plaintiff to the former mayor and village council, dated March 1, and one letter from her attorney, dated March 3, 2000. The memo complained only of the Village's decision to wipe out compensatory ("comp") time that had been accrued by a number of salaried Village employees, including Plaintiff (Exh. 17, Pltf. Resp.); the attorney's letter complained of that decision as well as other alleged acts of retaliation, including requiring Plaintiff to undergo a random drug test (Exh. 9, Village MSJ).

Defendant Clanton, as the new mayor, was the ultimate decision-maker concerning Plaintiff's reappointment--he was the person who would recommend her to the council. There is no issue as to his knowledge of Plaintiff's prior discrimination lawsuit; Clanton admitted he knew about the lawsuit at the time of the reorganization meeting, although he maintained he did not know any details about the case (Clanton depo. p. 26, Exh. 4, Village MSJ). Clanton's knowledge of the March 1 memo and the March 3 letter, however, is a more difficult question. These documents were submitted to the former mayor, Defendant Cottam, rather than Clanton. Clanton testified that he had not seen the March 3 letter until it was shown to him at his deposition, and did not know it existed

(Clanton depo. p. 77, *Id.*). There is also no direct evidence that he was aware of the March 1 memo regarding the FLSA issue.

In the absence of direct evidence that Clanton knew of Plaintiff's protected conduct, Plaintiff must rely on circumstantial evidence. This evidence consists of the following: (1) Defendant Lusk, the village administrator, did know about the March 3 letter; he testified that former mayor Cottam showed him the letter after she received it (Lusk depo. p. 23, Exh. 14, Pltf. Resp.); (2) After the election, Clanton spent a lot of time with Lusk, getting to know him, as Lusk had just started his job in early March and Clanton wanted to find out if he would be able to work with him (Clanton depo. pp. 40-41, Exh. 8, *id.*); (3) Lusk sat in on Plaintiff's interview with Clanton (Pltf. depo. p. 176, Exh. 6, *id.*); and (4) as noted above, Carol Rumley told Plaintiff that Lusk and Clanton offered Plaintiff's job to Rumley. From this evidence, Plaintiff suggests that inferences can be drawn that Lusk had some involvement in or knowledge of the decision by Clanton to delay or reject Plaintiff's reappointment as village clerk, and that Lusk must have discussed the March 3 letter, or at least its contents, with Clanton.

The Court agrees that the first inference can be drawn, despite the explicit denials by both Clanton and Lusk that they ever discussed Plaintiff's reappointment (*see, e.g.,* Lusk depo. p. 41, Exh. A, Clanton MSJ; Clanton depo. p. 59, Exh. 8, Pltf. Resp.). The Court disagrees, however, that the second inference can be reasonably drawn. There is no evidence that Clanton knew about any FLSA issue involving Plaintiff, no evidence that he was aware she or her attorney had raised the issue in writing, and no evidence that Lusk discussed the contents of the March 3 letter with Clanton. The only issue Lusk could recall from the March 3 letter was the drug-test question, which he investigated and then discussed at his deposition. It cannot be inferred, therefore, that the FLSA issue was so important to Lusk that he "must" have discussed it with Clanton. In the absence of any evidence that

8

Clanton was even aware Plaintiff had raised an issue involving the FLSA, the Court finds Plaintiff has failed to raise a genuine issue of fact as to whether Clanton was aware she had submitted, or caused to be submitted, the March 1 memo and the March 3 letter.

The effect of the above holding is that both Plaintiff's FLSA retaliation claim and her First Amendment claim must be dismissed. The March 1 memo and the March 3 letter constituted the conduct Plaintiff argues was protected by the FLSA and the First Amendment. Since there is no evidence that the alleged retaliator, Clanton, knew of the protected conduct, there can be no evidence supporting an inference that he intended to retaliate against Plaintiff for her protected conduct. *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993) (retaliation plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity).

**Retaliation Claims--Employer's Explanation for Actions and Pretext:** Since Plaintiff has established a prima facie case as to her § 1981 and Title VII retaliation claims, the Court turns to the next stage of the *McDonnell Douglas* test. At this stage, the burden shifts to the employer to provide a non-retaliatory explanation for its actions; if the employer does so, the plaintiff must then submit evidence tending to show the explanation is a pretext for discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Defendants' non-retaliatory explanation in this case is Clanton's assertion that he did not immediately reappoint Plaintiff because he had two concerns: problems with spelling in the minutes of the village council meetings, and Plaintiff's failure to get back to him with an answer to a question he had asked during the interview. The Court accepts this explanation as a neutral reason for Clanton's decision.

Plaintiff then points to the following evidence in support of her pretext claims: (1) Clanton was aware of Plaintiff's prior discrimination lawsuit, as noted above; (2) Clanton claimed in his deposition that the then-police chief had tried to discuss with Clanton Plaintiff's lawsuit and claims

9

of discrimination, but that Clanton told the chief he did not want to hear about it; however, the former chief has submitted an affidavit indicating that any discussion of Plaintiff and her discrimination claims was initiated by Clanton, not the chief (Clanton depo. pp. 38-39, Exh. 4, Village MSJ; Morey affid., Exh. 9, Pltf. Resp.); (3) Clanton admitted that Plaintiff was highly qualified to be the village clerk (Clanton depo. p. 63, Exh. 8, Pltf. Resp.); (4) Plaintiff used a spell-check function when preparing the minutes, had other people proof-read them, and was made aware of only minor complaints concerning the use of apostrophes or word usage; furthermore, Clanton never mentioned any problem with the minutes during his interview of Plaintiff, and Plaintiff had always received good performance evaluations (Pltf. depo. pp. 176, 181, Exh. 6, Pltf. Resp.); and (5) Plaintiff was the only employee subject to reappointment who had filed a discrimination claim, and was the only one of the three who was not reappointed.

This evidence raises an issue of fact as to whether the proffered explanation for failing to reappoint Plaintiff was genuine, or a pretext for retaliation. Plaintiff's qualifications, evaluations, and testimony that there had been only minor complaints about the minutes raises an issue as to whether Clanton was truly concerned about her ability to perform any aspect of her job. Additionally, Clanton went out of his way to distance himself from any discussion of Plaintiff's prior discrimination lawsuit. This, coupled with the dispute of fact as to whether he actually raised that subject in discussions with the former police chief, leads to a reasonable inference that he was in reality concerned about Plaintiff's prior litigation and took that concern into account in making his reappointment decision. In other words, if it was Clanton who brought up Plaintiff's prior lawsuit with the former chief, and then decided to reappoint the chief and the administrator but not Plaintiff, a reasonable inference can be drawn that the lawsuit was a reason, if not the only reason, for Clanton's decision. The Court

finds Plaintiff has met her burden of raising an issue of fact concerning the pretext question, and summary judgment will be denied on the Title VII and § 1981 retaliation claims.[4]

**Possible Race Discrimination Claim:** It is not clear whether Plaintiff, in addition to her retaliation claims, is raising a claim of discrimination on the basis of her race. Her complaint, in Count IV, alleges that she was treated differently than similarly situated non-Hispanic employees, and that Defendants refused to reappoint her as village clerk due to her race and nationality. The initial pretrial report, however, lists only retaliation claims and not a straight discrimination claim. In their briefs in support of summary judgment, Defendants stated that Plaintiff is raising claims of retaliation and discrimination. Plaintiff's response, however, discusses Defendants' different treatment of her and of non-Hispanic employees only in the context of creating an issue of fact concerning the pretext question. In spite of this confused record, the Court will assume such a claim is being raised as a separate matter, and address it.

A plaintiff in a disparate treatment, or discriminatory discharge, case such as this one may establish a prima facie case by showing that the plaintiff belongs to a racial minority, that she was qualified for the job she held, that she was discharged, and that the job was not eliminated but remained open. *See Hysten, supra,* 296 F.3d at 1181. Plaintiff has met that burden here, through

---

[4]The Court notes two arguments raised by Defendants Clanton and Lusk with respect to the § 1981 claims. First, they argue that Plaintiff, who served at the will of the mayor, had no contractual rights in her employment and therefore cannot raise a § 1981 claim. This argument is contrary to Tenth Circuit precedent, and is rejected. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 (10th Cir. 2001).

Clanton and Lusk also contend they are entitled to qualified immunity, because Plaintiff did not have a protected property right in her employment. This argument is also rejected. The concept of a protected property right is relevant only to a due-process claim, not to the retaliation, discrimination, and illegal-search claims remaining in this case. In other words, whether or not Plaintiff had a protected property interest in her position, she had a right not to lose that position as a result of Defendants' desire to retaliate or discriminate against her.

evidence (as discussed above) that she is Hispanic, that she was qualified for the position of village clerk, that she was constructively discharged from that position, and that the position was not eliminated. Under the *McDonnell Douglas* analysis, the burden shifts to Defendants to provide a race-neutral explanation for the alleged decision not to reappoint Plaintiff as village clerk. As the Court has already discussed above, there are issues of fact as to whether Defendants' explanation (that Clanton had concerns about Plaintiff's spelling, and her failure to get back to him with an answer to an interview question) was the true reason for Clanton's decision. Furthermore, as Plaintiff points out, two Anglo males were reappointed to their positions, and she was not, which on its face is disparate treatment.[5] A fact-finder must determine whether this disparate treatment was a result of Clanton's genuine concerns about Plaintiff's performance or his ability to work with her, or a result of discrimination on the basis of Plaintiff's race. *See Hysten* (proof that employer treated similarly-situated non-minority employees differently gives rise to an inference of discrimination). Summary judgment will be denied on this claim.[6]

**Fourth Amendment Search Claim:** While Plaintiff was the village clerk, she was a back-up emergency dispatcher for the Village. In that role, she might conceivably have been required to dispatch emergency vehicles to an accident involving the Village's shuttle service, which is regulated

---

[5]Defendants maintain there can be no claim of discrimination because Plaintiff's replacement, hired by Clanton, was Hispanic. As Plaintiff points out, however, the Tenth Circuit has held that a plaintiff need not show that she was replaced by a non-minority employee to make out a prima facie case of discrimination. *See Perry v. Woodward*, 199 F.3d 1126, 1137-38 (10th Cir.1999).

[6]In reaching this decision, the Court has not relied at all on the numerous exhibits submitted by Plaintiff concerning past acts of discrimination by the Village. Clanton was not the mayor at the time of those acts, and played no part in them. Furthermore, as discussed below, Clanton and Lusk are the only individuals who had any part in the decisions that Plaintiff now claims were retaliatory or discriminatory. The history of discrimination by previous Village officials, therefore, is irrelevant to Plaintiff's current claims.

by the federal Department of Transportation ("DOT"). The parties appear to agree that anyone who might dispatch emergency vehicles to the site of a DOT-regulated vehicle is in a "safety-sensitive" position under DOT regulations, and is subject to random drug tests. Plaintiff's name was on the Village's list of employees in safety-sensitive positions, and she was required to undergo a drug test in February, the month before she was not reappointed as village clerk. She testified that she did not want to take the drug test (which was negative), but did so because she knew she would be fired if she did not take it (Pltf. depo. p. 60, Exh. 6, Pltf. Resp.). Plaintiff maintains that her Fourth Amendment right to be free from unreasonable searches was violated by the random drug test.

Defendants dismiss this claim as having "no merit whatsoever." They assume, without citing any authority, that if Plaintiff was subject to random drug testing under the DOT regulations, she can have no constitutional objection to such testing. This is not the law. It is possible that the regulations, to the extent they reach a back-up emergency dispatcher such as Plaintiff, are in violation of the Fourth Amendment. *See Gonzalez v. Metropolitan Transp. Auth.*, 174 F.3d 1016, 1020-23 (9th Cir. 1999) (analyzing constitutionality of DOT drug-testing regulations as applied to a bus dispatcher and a bus-driving instructor). To determine whether that is so, this Court must be presented with facts concerning the nature of the privacy interest upon which the search intrudes, the character of the intrusion, the immediacy of the government concern, and the efficacy of the search for meeting that concern. *Id.*, pp. 1021-22. As in *Gonzalez*, at this point the Court has not been informed of many facts addressing these factors, particularly the immediacy-of-government-concern factor. For example, no evidence has been introduced concerning the number of times Plaintiff was asked to perform as a backup dispatcher, the number of accidents Village emergency personnel respond to, or how Plaintiff might pose an immediate threat to public safety if she were under the influence while acting as a backup emergency dispatcher. Rather than belabor the point and re-hash

13

the *Gonzalez* opinion, the Court refers the parties to that opinion as a guide to the type of evidence that might be necessary to allow this Court to determine, as a matter of law, whether a constitutional violation occurred when Plaintiff was subjected to the random drug test. At this point, however, summary judgment cannot be granted on the Fourth Amendment claim.[7]

Plaintiff's complaint suggested that the drug test was imposed on her out of discriminatory or retaliatory motives. Plaintiff's response brief does not mention such a claim. If Plaintiff is still maintaining such a claim, the Court will grant summary judgment. There is no evidence that would support an inference that Plaintiff's name was placed on the safety-sensitive list, in the first place, out of retaliatory or discriminatory motives. Furthermore, there was undisputed testimony that a State agency, not the Village, selected Plaintiff from the safety-sensitive list to be tested (Shipman depo. pp. 41, 47, Exh. 11, Village MSJ). Since the Village did not select the individuals subjected to the drug tests, there can be no finding of discriminatory or retaliatory motives for Plaintiff's test.

**FLSA Claim Concerning Comp Time:** For some period of time, Plaintiff and other Village employees had been allowed to accumulate comp time if they worked more than their assigned hours. This accrued comp time, however, was canceled by the Village for all salaried employees, because the Village decided that salaried employees are not entitled to comp time under the FLSA. Plaintiff maintains this cancellation was a violation of FLSA. The main question addressed by the parties, and to be decided by this Court, is whether Plaintiff was entitled to accrue the comp time in the first place.

---

[7]The Court notes that Plaintiff's acquiescence to the drug test, under the belief that she would be fired if she did not, does not constitute the type of consent that would obviate her Fourth Amendment claim. *See, e.g., Bolden v. SEPTA*, 953 F.2d 807, 824 (3d Cir. 1991) (silent submission to a drug test on pain of dismissal from employment does not constitute consent to the test). Furthermore, the fact that the State rather than the Village selected Plaintiff's name from the safety-sensitive list for the test does not automatically absolve the Village of liability. As the Village acknowledges, a Village employee placed Plaintiff's name on the list in the first place and left her name on the list after she became a backup dispatcher.

14

If the FLSA did not mandate that Plaintiff be granted comp time, the revocation of the accrued comp time cannot violate the FLSA.

Defendants contend Plaintiff was a salaried administrative employee, and was therefore exempt from the overtime provisions of the FLSA. In response, Plaintiff points out that she did not customarily and regularly direct the work of two or more employees or have authority to hire and fire anyone. These facts, however, are relevant to the FLSA exemption for executive, not administrative, employees. The administrative employee exemption requires that a salaried employee who is paid more than $250 per week, as Plaintiff was, (1) perform "office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers;" and (2) customarily and regularly exercise discretion and independent judgment. 29 C.F.R. § 541.2; *see also Hagadorn v. M.F. Smith & Assocs., Inc.*, 1999 WL 68403 (10th Cir. unpublished opinion). The Court has reviewed the job description for Plaintiff's position as village clerk (Exh. 1, Village MSJ). According to that description, Plaintiff's work was office or nonmanual work, and included responsibilities such as retaining all minutes, ordinances, resolutions, and other documents generated by the village council, the mayor, and the village administrator; recording all proceedings of the council; assisting the village administrator in implementing all municipal policies and in developing and submitting the annual budget; serving as finance officer of the municipality; and expending the municipality's money. These duties require the use of discretion and independent judgment. Plaintiff has not attempted to explain how her actual duties might have differed from those in the job description. The Court will therefore find that Plaintiff is covered by the administrative employee exemption to the FLSA overtime requirements, and grant summary judgment to Defendants on this issue. *See generally Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 642-44 (7th Cir. 1998) (discussing administrative employee exemption, affirming district court's finding that plaintiff

was an administrative employee); *see also Gagnon v. Resource Technology, Inc.*, 2001 WL 909028 (10th Cir. unpublished opinion) (same).

**Appropriate Defendants:** Plaintiff has sued several Defendants who had no role in the adverse actions she has complained of, and who should be dismissed from this case. The only Defendants who were involved in the decision not to reappoint Plaintiff, according to the evidence presented to the Court, were Clanton and Lusk. There is no evidence that Clanton discussed the matter with Cottam, Hill, Erb, or Sheriff. Furthermore, the question of whether to reappoint Plaintiff did not come up directly at the reorganization meeting. Instead, Clanton simply recommended reappointment of Lusk and Moyer, and did not mention Plaintiff. Defendants Hill and Erb, therefore, as village councilors, did not have an opportunity to vote on Plaintiff's reappointment and cannot be said to have had any role in the failure to reappoint her. All individual Defendants except Clanton and Lusk, therefore, will be dismissed as to the retaliation and discriminatory-discharge claim. Furthermore, as Clanton and Lusk point out, individual supervisors cannot be held liable under Title VII, and they will be dismissed as Defendants in that claim. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996). On the other hand, individuals can be held liable for a violation of 42 U.S.C. § 1981, and Clanton and Lusk will remain as Defendants on the § 1981 claims. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds, Kendrick, supra*; *accord Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000) (although there is no individual liability under Title VII, there is such liability under § 1981).

As to the § 1983 claim based on the drug test, it appears there is evidence that would support imposition of liability on the Village itself. The testimony of October Moon Shipman, the Village employee most closely connected to the testing program, indicates that the inclusion of Plaintiff's name on the safety-sensitive list of employees subject to testing was pursuant to a municipal policy

16

that was in accord with DOT regulations (Shipman depo. pp. 30-31, 52-53, Exh. 16, Pltf. Resp.). Where a possible constitutional violation has resulted from a municipal policy or custom, it is appropriate to retain the municipality as a defendant. *See Camfield v. City of Oklahoma City,* 248 F.3d 1214, 1229 (10th Cir. 2001). The only other Defendant who may have had a hand in the drug test is Defendant Sheriff, the director of the Public Works department of the Village. According to Shipman, the Public Works department controls the testing program. In addition, it appears Sheriff was the person who told Plaintiff to go take the drug test (Pltf. depo. p. 59, Exh. 6, Pltf. Resp.). At this time, therefore, Sheriff will remain as a Defendant for purposes of the Fourth Amendment § 1983 claim.

**Conclusion:** Pursuant to the foregoing opinion, the following claims and Defendants remain in this lawsuit: (1) Plaintiff's claims of retaliation and discrimination under § 1981, against the Village, Clanton, and Lusk; (2) Plaintiff's claims of retaliation and discrimination under Title VII, against the Village; and (3) Plaintiff's Fourth Amendment claim under § 1983, against the Village and Sheriff. Summary judgment is granted on all other claims and in favor of all other Defendants. The motion to strike is denied as unnecessary, although it may be renewed if Plaintiff intends to introduce at trial any of the evidence covered by that motion.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendants' motions for summary judgment (Docs. 45 and 47) be, and hereby are, GRANTED in part and DENIED in part; and Defendants' motion to strike (Doc. 60) be, and hereby is, DENIED without prejudice to renewing the motion prior to trial.

Dated this 23rd day of September, 2002.

                                      BRUCE D. BLACK
                                      United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
J. Edward Hollington

**For Defendants Village, Cottam, Hill, Erb, and Sheriff**:
Judith C. Herrera
Mark E. Komer

**For Defendants Clanton and Lusk:**
Agnes Fuentevilla Padilla